UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILLIP C. ROGERS,

    Plaintiff,

v.

FIFTH THIRD BANK, N.A.,

    Defendant.
_____/

## COMPLAINT

**I. Introduction**

1. This is an action for damages brought by plaintiff Phillip C. Rogers against defendant Fifth Third Bank, N.A., for calling Plaintiff's cellular telephone and sending hundreds of unsolicited text messages, thereby violating the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

2. The TCPA states that is unlawful "for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service. . . . 47 U.S.C. § 227(b)(1)(A)(iii).

3. The TCPA provides a private right of action and a minimum award of damages in the liquidated amount of $500.00 per violation, which may be trebled to $1,500.00 per violation for willful violations. 47 U.S.C. § 227(b)(3).

4. Unsolicited text messages cause actual damage to the recipient. Unsolicited text messages cause the recipient to incur actual money damages when the text messages consume the allotment of prepaid minutes, text messages and data that have been purchased by the

1

recipient. Unsolicited text messages waste the recipient's time that could have been spent on something else, rather than reviewing and deleting the unsolicited text messages. Unsolicited text messages invade and interrupt the recipient's privacy and workday, and occupy memory space on the recipient's telephone, preventing the storage of invited and desired communications.

**II. Jurisdiction**

5. This court has jurisdiction under 47 U.S.C. § 227 (TCPA) and 28 U.S.C. § 1331. Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred in the Western District of Michigan.

**III. Parties**

6. Plaintiff Phillip C. Rogers is an adult natural person residing in Kent County, Michigan.

7. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

8. Defendant Fifth Third Bank, N.A. is a national banking institution organized under the laws of the United States with its headquarters located in Cincinnati, Ohio. Defendant maintains multiple branch offices in the Western District of Michigan. Defendant regularly transacts business in the Western District of Michigan.

9. Defendant is a "person" as defined by 47 U.S.C. § 153(39).

10. Defendant acted through its agents, employees, officers, members, directors, and representatives at all times relevant to this action.

**IV. Facts**

11. Plaintiff is an attorney, licensed to practice law in Michigan. Plaintiff specializes in consumer protection law. Plaintiff has represented hundreds of consumers who have been victimized by entities operating various scams. In efforts to identify the entities operating the

scams, Plaintiff sometimes contacts the entities by telephone to hear any pre-recorded greeting and to gather other information. Because telephone calls made from Plaintiff's office phone are identified by the called parties' caller ID as originating from "Office of Phillip C. Rogers" or "Phillip C. Rogers Attorney at Law," Plaintiff sometimes uses prepaid cellular telephones to make anonymous telephone calls to scam operators when investigating Plaintiff's clients' claims.

12. Many scam operators use sophisticated software to capture the telephone numbers associated with calls that are received and then associate the telephone numbers with specific victim files. Accordingly, Plaintiff periodically obtains new, randomly assigned telephone numbers for Plaintiff's prepaid cellular telephones, to be used when investigating Plaintiff's clients' claims.

13. Plaintiff purchased a cellular telephone from Walmart. The cellular telephone was pre-programmed to use a network operated by a wireless service provider named TracFone Wireless, Inc. ("TracFone").

14. TracFone provides prepaid cellular telephone service to its subscribers.

15. On August 22, 2019, TracFone activated Plaintiff's cellular telephone and randomly assigned Plaintiff's cellular telephone the cellular telephone number 216-XXX-7627.

16. Plaintiff paid more than $60.00 to activate Plaintiff's cellular telephone with prepaid minutes purchased by Plaintiff from TracFone. Plaintiff was required to purchase prepaid minutes from TracFone to enable Plaintiff's cellular telephone to make and receive telephone calls, as well as to send and receive text messages.

17. Each time Plaintiff's cellular telephone receives a text message, Plaintiff is required to expend a portion of Plaintiff's prepaid minutes to view the content of the text message.

18. At all times from August 22, 2019 through the date of filing of this complaint, Plaintiff was the actual, current and sole owner, possessor and operator of the cellular telephone, as well as the actual, current and sole subscriber of the related cellular telephone number ending in 7627, and was solely and financially responsible for maintaining the cellular telephone and related services.

19. Less than twenty-four hours after Plaintiff activated the cellular telephone that was assigned the related cellular telephone number ending in 7627, Plaintiff's cellular telephone began to receive unsolicited text messages from multiple entities, including defendant Fifth Third Bank, N.A.

20. Between August 23, 2019 and the date of filing of this complaint, Defendant used the SMS short code 535353 to send a minimum of 304 text messages to Plaintiff's cellular telephone number ending in 7627. A log of the 304 text messages, with dates, times, SMS short codes, and other content, is attached to this complaint as Exhibit A.

21. According to the Common Short Code Administration, SMS short code 535353 is a "dedicated" and "vanity" short code, owned and used exclusively by Defendant.

22. SMS text messages sent to cellular telephones are subject to the same consumer protections under the TCPA as voice calls made to cellular telephones. *In re Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Declaratory Ruling and Order, CG Docket No. 02-278, WC Docket No. 07-135, FCC 15-72, ¶ 107 (rel. July 10, 2015), https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order (the "2015 FCC Order").

23. "A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co. v. Gomez*, ---- U.S. ----, 136 S.Ct. 663, 667, 193 L.Ed.2d 571 (2016).

24. Defendant and/or its agents used an "automatic telephone dialing system" ("ATDS") as the phrase is defined and used in the TCPA, 47 U.S.C. § 227(a)(1), to call and send to Plaintiff's cellular telephone, the SMS text messages that are listed in Exhibit A.

25. The TCPA's "statutory definition of ATDS includes a device that stores telephone numbers to be called, whether or not those numbers have been generated by a random or sequential number generator." *Marks v. Crunch San Diego, LLC*, 904 F.3d, 1041, 1043 (9th Cir. 2018), *cert. dismissed*, ---- U.S. ----, 139 S. Ct. 1289, 203 L.Ed.2d 300, (2019); *see also, Allan v. Pennsylvania Higher Education Assistance Agency*, 398 F.Supp.3d 240, 244 (W.D. Mich. 2019).

26. The equipment used by Defendant and/or its agents to make the calls and send the described SMS text messages to Plaintiff's cellular telephone had the capacity (a) to store or produce telephone numbers to be called, using a random or sequential number generator, and (b) to dial such numbers.

27. Moreover, the equipment used by Defendant and/or its agents to make the calls and send the described SMS text messages to Plaintiff's cellular telephone was programmed to sequentially or randomly access, dial, and call those stored numbers. The calls were made and SMS text messages sent with equipment capable of dialing numerous phone numbers and sending numerous SMS text messages in a short period of time, without human intervention, as part of an automated process that engaged such capabilities when Defendant and/or its agents called and sent the described SMS text messages to Plaintiff's cellular telephone.

28. The sheer number and frequency of the calls made and SMS text messages sent by Defendant to Plaintiff's cellular telephone, as well as the content of the SMS text messages, strongly indicates that Defendant used an ATDS to make the calls and send the SMS text messages. It is extremely unlikely that any human intervened in the automated process used by Defendant to make the calls and send the SMS text messages.

29. The TCPA requires that the caller have the prior express consent of the "called party" to use an ATDS to make a call or send a text message to a telephone number assigned to a cellular telephone service. 47 U.S.C. § 227(b)(1)(A)(iii). The FCC has specifically stated that the "called party" is not the intended recipient, but rather, the actual current subscriber or customary user of the cellular telephone number dialed. 2015 FCC Order, ¶ 73 ("We find that the 'called party' is the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan. Both such individuals can give prior express consent to be called at that number. Thus, with the limited exception discussed below, calls to reassigned wireless numbers violate the TCPA when a previous subscriber, not the current subscriber or customary user, provided the prior express consent on which the call is based.").

30. Defendant did not obtain Plaintiff's "prior express consent" as the phrase is defined and used in the TCPA, 47 U.S.C. § 227(b)(1)(A), to make any call to Plaintiff's cellular telephone number ending in 7627.

31. Defendant did not obtain Plaintiff's "prior express consent" as the phrase is defined and used in the TCPA, 47 U.S.C. § 227(b)(1)(A), to send any SMS text message to Plaintiff's cellular telephone number ending in 7627.

32. None of the described calls made by Defendant and/or Defendant's agents to Plaintiff's cellular telephone number ending in 7627 were made for "emergency purposes" as the phrase is defined and used in the TCPA, 47 U.S.C. § 227(b)(1)(A).

33. None of the described SMS text messages sent by Defendant and/or Defendant's agents to Plaintiff's cellular telephone number ending in 7627 were sent for "emergency purposes" as the phrase is defined and used in the TCPA, 47 U.S.C. § 227(b)(1)(A).

34. "[T]he TCPA places no affirmative obligation on a called party to opt out of calls to which he or she never consented; the TCPA places responsibility on the caller alone to ensure that he or she has valid consent for each call made using an autodialer, artificial voice, or prerecorded voice. A caller may rely on the valid consent of a consenting party until that consenting party revokes the consent and opts out of calls, but the subscriber to or customary user of a reassigned number has never consented and therefore has nothing from which to opt out." 2015 FCC Order, ¶ 81.

35. "Consumers switched numbers at the time Congress passed the TCPA and callers undoubtedly called wrong numbers, yet we see nothing in the law or legislative history suggesting that Congress intended lesser – or no – protection for the unfortunate consumer who inherited a new number . . . ." 2015 FCC Order, ¶ 84.

36. "Callers have a number of options available that, over time, may permit them to learn of reassigned numbers. For example, at least one database can help determine whether a number has been reassigned, and consumer groups have expressed strong support for full participation from carriers to make this type of option more effective. Further, callers may ask consumers to notify them when they switch from a number for which they have given prior express consent. Nothing in the TCPA or our rules prevents parties from creating, through a

contract or other private agreement, an obligation for the person giving consent to notify the caller when the number has been relinquished. The record indicates that callers seeking to discover reassignments may: (1) include an interactive opt-out mechanism in all artificial or prerecorded voice calls so that recipients may easily report a reassigned or wrong number; (2) implement procedures for recording wrong number reports received by customer service representatives placing outbound calls; (3) implement processes for allowing customer service agents to record new phone numbers when receiving calls from customers; (4) periodically send an email or mail request to the consumer to update his or her contact information; (5) utilize an autodialer's and/or a live caller's ability to recognize 'triple-tones' that identify and record disconnected numbers; (6) establish policies for determining whether a number has been reassigned if there has been no response to a 'two-way' call after a period of attempting to contact a consumer; and (7) enable customers to update contact information by responding to any text message they receive, which may increase a customer's likelihood of reporting phone number changes and reduce the likelihood of a caller dialing a reassigned number." 2015 FCC Order, ¶ 86.

37. The Commission requires that disconnected numbers be aged for a minimum of 45 days before being reassigned to a new subscriber, in efforts to reduce the number of unwanted calls to the new subscriber. Report and Order In the Matter of Advanced Methods to Target and Eliminate Unlawful Robocalls (CG Docket No. 17-59; FCC 18-177, ¶ 15; adopted December 12, 2018). The Commission also requires that numbers be recycled within 90 days for a residential number. 47 C.F.R. § 52.15(f)(ii). 2015 FCC Order, ¶ 86, fn. 303. "For calls within this time period [between disconnection and reassignment], autodialers are equipped to record 'triple-tone' signals that identify that the number has been disconnected. A manual dialer will, likewise,

hear and identify a triple-tone . . . By recognizing such a disconnected number, callers obtain constructive knowledge that a number for which they have received consent is no longer in service, and thus, likely to be reassigned." 2015 FCC Order, ¶ 86, fn. 303.

38. The cellular telephone number ending in 7627 was disconnected for multiple days immediately preceding the reassignment of the cellular telephone number to Plaintiff. Upon information and belief, during that period of days between the date of disconnection and the date of reassignment, Defendant sent multiple SMS text messages to the cellular telephone number ending in 7627, and because of that, Defendant knew or should have known that the cellular telephone number was disconnected and likely to be reassigned.

39. Defendant made each of the calls and sent each of the SMS text messages that are described in Exhibit A to Plaintiff's cellular telephone number ending in 7627.

40. Alternatively, Defendant's agents, with actual and apparent authority, made each of the calls and sent each of the SMS text messages that are described in Exhibit A to Plaintiff's cellular telephone number ending in 7627.

41. Defendant knew or should have known that Defendant did not have Plaintiff's prior express consent to make the described calls to Plaintiff's cellular telephone number ending in 7627.

42. Defendant knew or should have known that Defendant did not have Plaintiff's prior express consent to send the described SMS text messages to Plaintiff's cellular telephone number ending in 7627.

43. Defendant made a business decision and chose not to take all steps available to Defendant to avoid making the described calls and sending the described SMS text messages to Plaintiff's cellular telephone number ending in 7627.

44. Defendant willfully and knowingly violated the TCPA.

45. As an actual and proximate result of the acts and omissions of Defendant and its employees and agents, Plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, periodic loss of the use of his cellular telephone, annoyance, aggravation, invasion of his privacy, interference with his work, and violation of his right as created by Congress to be free from Defendant's unsolicited calls and text messages and intrusion in Plaintiff's life, for which Plaintiff should be compensated in an amount to be established by the Court and at trial.

## V. Claims for Relief

### Count 1 – Telephone Consumer Protection Act

46. Plaintiff incorporates the foregoing paragraphs by reference.

47. Defendant has violated the TCPA. Defendant's violations of the TCPA include, but are not necessarily limited to, the following:

   a) Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

**Wherefore**, Plaintiff seeks judgment against Defendant for:

   a) Damages in the amount of $500.00 for each call made and SMS text message sent by Defendant and/or Defendant's agents to Plaintiff's cellular telephone number ending in 7627, pursuant to 47 U.S.C. § 227(b)(3)(B);

   b) Treble damages, calculated as $1,500.00 per call made and SMS text message sent by Defendant and/or Defendant's agents to Plaintiff's cellular telephone number ending in 7627, pursuant to 47 U.S.C. § 227(b)(3);

   c) An injunction requiring Defendant and/or Defendant's agents to cease calling and cease sending SMS text messages to Plaintiff's cellular telephone ending in 7627,

pursuant to 47 U.S.C. § 227(b)(3)(A);

d) Costs of this action; and

e) Such other and further relief as the Court deems just and proper.

Dated: January 2, 2020 /s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
Plaintiff
6140 28th Street SE, Suite 115
Grand Rapids, Michigan 49546-6938
(616) 776-1176
ConsumerLawyer@aol.com